**RES IPSA LAW GROUP**
Curtis A. Westfall, Esq. CA Bar No. 128447
MGM Tower
1250 Constellation Boulevard, Suite 2320
Los Angeles, California 90067
Phone: (310) 525-3575
Facsimile: (310) 310-8176

Attorneys for Plaintiff

FILED
11 APR 20 PM 1:53
CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES
BY:

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| Matthew C. Roberts,<br><br>Plaintiff,<br><br>vs.<br><br>FIRST FRANKLIN, NA A DIVISION OF NATIONAL CITY BANK OF INDIANA; SELECT PORTFOLIO SERVICING, INC.; U.S. BANK, N.A., as trustee for the holders of the FIRST FRANKLIN MORTGAGE LOAN TRUST Mortgage Pass-Through Certificates, Series 2005-FF9; and DOES 1-10<br><br>Defendants. | CASE NO.: CV11-03371 AHM(JCGx)<br><br>**COMPLAINT FOR**<br>**1. DECLARATORY RELIEF**<br>**2. INTENTIONAL MISREPRESENTATION**<br>**3. NEGLIGENT MISREPRESENTATION**<br>**4. QUIET TITLE;**<br>**5. LACK OF FORMATION OF CONTRACT**<br>**6. BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Matthew C. Roberts, (hereinafter, "Plaintiff") by and through his counsel of record, Res Ipsa Law Group, makes and files this Complaint for preliminary and permanent injunctive relief and damages against Defendants First Franklin, N.A. a division of National City Bank of Indiana ("First Franklin"); Select Portfolio Servicing, Inc. ("SPS"); U.S. Bank N.A., as Trustee for the holders of the First Franklin Mortgage Loan Trust Mortgage Pass-Through Certificates (Series 2005-FF9) ("U.S. Bank"); Select Portfolio Servicing, Inc. ("SPS") and DOES 1-100 (collectively "Defendants"). In support of this Complaint, Plaintiff alleges as follows:

## NATURE OF THE CASE

1. Plaintiff brings this action in order to prevent the improper taking and/or foreclosure of his family home by defendants who no longer own the debt secured by the home. Plaintiff also alleges that First Franklin intentionally and negligently misled him into believing that he would be able to modify his mortgage and has suffered damages as a result. Plaintiff further alleges claims for promissory estoppel, breach of the covenant of good faith and fair dealing, and quiet title against entities (and possibly individuals) who have assigned away any right or interest they may have previously at one time held in Plaintiff's property.

2. First Franklin appears on a Promissory Note (the "Note," as described more specifically below) and Deed of Trust ("Trust Deed," as described more specifically below) as the Plaintiff's lender, but it now disclaims this status. First Franklin claims to be servicing the Note on behalf of an unnamed holder of the Note, yet it has failed to produce any evidence, despite repeated requests, of the true Note holder's identity. Significantly, Los Angeles County Recorder's Office records show no evidence of the purported assignments of the Trust Deed from First Franklin.

3. Upon information and belief, as described more fully below, it appears that the First Franklin sold or pooled the Plaintiff's Note into a mortgage-backed security or another type of security instrument which was then sold to third-party investors.

4. This action, therefore, seeks to establish who "owns the debt" secured by Plaintiff's Trust Deed and who currently possesses, and has legal standing to exercise the default remedies contained therein, including the right to notice a default and foreclose. As alleged below, Plaintiff seeks a declaration that: (a) Defendants have no right to foreclose on their own behalf because they lack the prerequisite legal standing to do so;

(b) Defendants are required to demonstrate any right they claim to foreclose as agents of the investors in mortgage-backed securities or other types of security instruments that are secured by the Plaintiff's Trust Deed and; (c) failing such demonstration by Defendants, a declaration that requires the third-party investors to come forward to assert their interest and ownership in the Note and their accompanying right to declare default and foreclose, or to have the title quieted against them, leaving only a personal obligation.

**THE PARTIES**

5. Plaintiff, Matthew C. Roberts is an actual citizen of California, who resides at 10014 Clybourn, Sunland, California 91040.

6. On information and belief, Defendant, First Franklin is a Delaware company, with its principal place of business at 2150 North First Street San Jose, California 95131 and at all times relevant herein was doing business in the State of California.

7. On information and belief, Defendant, U.S. Bank National Association, as trustee for the holders of the First Franklin Mortgage Loan Trust Mortgage Pass-Through Certificates, Series 2005-FF9 is a Delaware company, with its principal place of business at 745 7th Avenue New York, New York 10019 and at all times relevant herein was doing business in the State of California.

8. On information and belief, Defendant, Select Portfolio Servicing, Inc. is a Utah corporation with its principal place of business 3815 S. West Temple, Salt Lake City, Utah 84115, and at all relevant times was doing business in the State of California.

9. Plaintiff is the borrower/purchaser of the real property more particularly described below. Defendants are the purported lender, and its purported, as yet unidentified, successors and assigns. The investors, whose identities have been withheld

by the Defendants, or unknown successors in interest, are currently unknown entities who may or do claim an alleged interest in the property, are named as Does 1-10.

10. Plaintiff is unaware of the true names and capacities of Defendant Does 1 through 100, inclusive, and therefore sues these defendants by fictitious names. Plaintiff is informed and believes, and on that basis, alleges that each of the fictitiously named defendants is in some manner responsible for the damage to Plaintiff as alleged in this Complaint. Plaintiff will amend this Complaint to show the true names and capacities of these fictitiously named defendants after their true names and capacities have been ascertained.

**JURISDICTION AND VENUE**

11. The amount in controversy exceeds $75,000.00 exclusive of interest and costs.

12. The court has jurisdiction of this action pursuant to 28 USC §2201, California Code of Civil Procedure §1060-1062.5 (declaratory judgment) and California Code of Civil Procedure §761.020 - 761.040 (quiet title), and 28 USC §1332 (a). This court also has, pursuant to 28 U.S.C. § 1367, supplemental jurisdiction over all other claims that are so related to claims in this action that they form part of the same case or controversy under Article III of the United States Constitution.

13. Venue is proper in this District pursuant to 28 U.S.C. § 1391(c).

**THE PROBLEMATIC ORIGINATION OF THE LOAN**

14. Plaintiff purchased for value, and is the owner of, the property commonly known as 10014 Clybourn, Sunland, California 91040, in Los Angeles County and legally referred to as:

LOT 20 OF TRACT NO. 33386, IN THE CITY OF LOS ANGELES COUNTY OF LOS ANGELES, STATE OF CALIFORNIA AS PER MAP RECORDED IN BOOK 941 PAGE (S) 63 TO 72 INCLUSIVE OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY

(hereinafter the "Property" or "Subject Property") under a grant deed thereto made and recorded in the Los Angeles County Recorder's Office.

15. On or about July 8, 2005, Plaintiff executed a Promissory Note (the "Note") in favor of First Franklin designated as "Lender" on the loan documents (First Franklin may be from time to time hereinafter referred to as "Lender").

16. The parties to the Note were designated as the Plaintiff as "Borrower" and First Franklin as "Lender".

17. On information and belief, U.S. Bank National Association, as trustee for the holders of the First Franklin Mortgage Loan Trust Mortgage Pass-Through Certificates, Series 2005-FF9 purports to be the successor in interest of the Note.

18. On information and belief, SPS purports to be acting as the Servicer of U.S. Bank's purported successor interest in the Note.

19. On or about July 8, 2005, Plaintiff made and delivered a Deed of Trust (hereinafter "Trust Deed"), purporting to convey the Subject Property in trust for the purposes recited therein to United Title Co. as Trustee. The Trust Deed was thereafter recorded in the Los Angeles County Recorder's Office on July 8, 2005 as Instrument No. 05-1605567.

20. The parties to the Trust Deed, which is a contract of adhesion, were Plaintiff and First Franklin and as purported "Beneficiary". The loan documents named "First Franklin" as the "Lender" but, unbeknownst to the Plaintiff, First Franklin did not fund the mortgage and had no intention of funding the mortgage.

21. Yet, pursuant to the Trust Deed, only the "Lender" may cause the Trustee to execute written notice of the occurrence of an event of default as well as the Lender's election to cause the Subject Property to be sold in foreclosure proceedings.

22. As discussed below, upon information and belief, funding for the Note was actually provided by investors in mortgage-backed securities, who bought undivided interests in a revenue stream originating from a large pool of mortgages.

23. In fact, First Franklin and SPS, who claims to be servicing the loan, have misrepresented or purposefully withheld or failed and refused to respond to Plaintiff's repeated pre-litigation requests to disclose the true identity of the actual "Note Holder" as defined under Plaintiff's Promissory Note, and the "Beneficiary" as defined under Plaintiff's Trust Deed.

24. First Franklin and SPS have failed to present evidence responsive to Plaintiff's numerous pre-litigation written and verbal requests including a letter sent to Defendants regarding the unidentified and/or misrepresented current foreclosor's authority to foreclose, to which Defendants did not respond at all. Defendants have consistently obfuscated Plaintiff's numerous requests for basic information (about who owned his Note, and who was being paid for it, and in what amounts).

## THE FUNDING AND SECURITIZATION

25. Plaintiff's loan was funded by an undisclosed warehouse lender, which received the funds from, or was reimbursed by, investors in securities backed in part by Plaintiff's mortgage. When the warehouse lender transferred the Note to a securitization pool, it transferred, and lost any interest in the Note and Trust Deed.

26. On information and belief, First Franklin tailored Plaintiff's loan to meet the particular specifications of the ultimate purchaser of the Note.

27. Upon information and belief First Franklin's function was limited to obtaining the Note, in exchange for a fee, as a preliminary step to "securitization" of the debt as described above.

28. Plaintiff's Note was, in fact, securitized and sold to investors in mortgage-backed securities purportedly secured in part by the Subject Property.

29. Upon information and belief, all Defendants knew of and/or participated in the securitization of the Note.

30. Because of the securitization of the Note, Plaintiff has been unable to communicate directly with the holder of their Note, which Plaintiff reasonably contemplated and at all times understood to be a material term of his agreement and which was a material term of their agreement.

31. Because of the securitization of the Note, and Defendants' failure and refusal to respond to Plaintiff's repeated requests for information, Plaintiff has been unable to discern the true owner of his Note.

32. Plaintiff's Trust Deed and Note were intentionally separated by assignment of the Note during the securitization process without assignment of the related Trust Deed.

33. Only the owners of the debt—the investors in the securities backed by Plaintiff' mortgage—have the right to foreclose on the Note's security (the Subject Property).

34. Significantly, the undisclosed investor or investors in the securities backed by Plaintiff's mortgage have not attempted to call a default upon Plaintiff nor have the investors threatened or attempted to foreclose.

35. Upon information and belief, the Note in question followed the ordinary course of securitization as described below.

**THE ORDINARY COURSE OF SECURITIZATION**

36. In the ordinary course of securitization, those responsible for amassing the mortgage-backed securities ("MBS"), the securitizers—generally the lenders—gathered and lodged in a repository massive numbers of notes pursuant to what was styled a "Pooling and Securitization Agreement."

37. Under the Pooling and Securitization Agreement, these massive numbers of notes were put in the possession of a "custodian" who acted for the investors, but had no rights, interest, or ownership in the notes or the pooled securities.

38. Typically, a Pooling and Service Agreement purports to set up a "common law trust," for which the securitizers appoint a trustee. Loans are sold to the trust, and the debts accumulated in a trust "pool."

39. Upon information and belief, this follows the traditional pattern of a trustor (a purported lender or lenders) who assigns assets to a trustee, to be managed for the benefit of a beneficiary.

40. In securitization cases, however, the purported trust is nothing more than a vehicle for transferring debt and the purported trustee acts merely as a custodian.

41. Specifically, upon information and belief, transfer of notes and debt to the trust is intended as a true sale for tax purposes, not a transfer in trust in the traditional sense, meaning there is no true trust beneficiary. The trust is simply a vehicle for pooling of the debts and the subsequent sale of those debts to others: investors in the MBS.

42. Purchasers (or investors) of mortgage-backed securities ("MBS") are given "certificates" certifying their ownership interest in the pooled group of "loans" and their right to obtain payments due under the pooled group of notes.

43. Frequently, the "custodian" appointed by the securitizers is the original lender.

44. Investors in MBS do not, however, sign the Pooling and Servicing Agreement.

45. Accordingly, the Pooling and Servicing Agreements do not bind the interests of the investors relative to the mortgages or trust deeds associated with the notes pooled in the MBS, as such would violate the Statute of Frauds.

46. Further, the "custodian" appointed by the securitizers is not a "holder in due course" of the notes in the MBS.

47. Because the "custodian" is not the "holder in due course" of the notes, the "custodian" has no authority to call default upon the notes in the MBS. Nor does the custodian have the authority to foreclose the notes in the MBS.

48. Thus, for example, to demonstrate a right to foreclose, it is not sufficient for First Franklin, NA merely to have possession of a note if the note has been securitized. Indeed, if the note has been securitized, the possessor of the note is presumptively merely a custodian. And if First Franklin, NA has possession of the Note merely as a custodian for investors in the MBS, First Franklin, NA may not foreclose without demonstrating an express agency granted by all of the investors in the MBS to foreclose on their behalf at their specific instance and request.

49. The investors in the MBS give value, and, in exchange, receive certificates, which certify their ownership of the debt.

50. The value given by the investors in the MBS, as evinced in their MBS certificates, essentially replaces the value in the pooled and parceled notes. In other words, the certificates the investors in the MBS receive evincing their ownership in the MBS may be regarded as replacement of the notes because the certificates of ownership are the negotiated instruments that evince the debt secured by the mortgage or trust deeds.

51. The interest held by the investors in the MBS is not that of a trust beneficiary: it is express ownership of debt. The trust setup by the securitizers is emptied of assets, and the trustee thereafter typically performs no functions.

52. Upon information and belief, there are no true beneficiaries of the purported trust.

53. Moreover, the securitizers appoint loan servicers for the loans, but such appointment does not bind or involve the investors.

54. Indeed, any Pooling and Servicing Agreement unsigned by investors in the MBS is not an express agency agreement because it does not satisfy the Statute of Frauds.

55. Summarizing, in the ordinary course of securitization, Pooling and Servicing Agreements are entered into by the securitizers, but not the investors in MBS. The original lenders and the "trustee" or "custodian" execute the certificates of ownership in the MBS, which are issued to but not signed by the MBS investors.

56. Transfer of the beneficial interest in a note and thus a mortgage or trust deed confers upon the investors in the MBS authority to declare a default and authorize foreclosure.

57. These are not powers which a trustee named in a trust deed can exercise without authorization of the beneficiary. Nor, if challenged, can such authorization be presumed.

58. While it may be generally presumed that a trustee acts at the behest of the beneficiary, it is doubtful, in securitization cases, that the trustee knows who the beneficiaries are, assuming they exist, or has ever obtained any instruction from them.

59. Thus, trustees or custodians in the situation described above may not declare default or authorize foreclosure unless they can show their agency to act for the investors in the MBS.

**THE "NOTE" IN THIS ACTION**

60. Upon information and belief, Plaintiff's Note was securitized in a manner similar to that described above.

61. Upon information and belief, Plaintiff's Note was pooled with similar debts pursuant to a Pooling and Servicing Agreement between Lender and a servicer, in which that servicer purported to act as trustee of a trust created thereby, for the purpose of selling such debts as securities to investors, and appointing a separate servicer of the pooled debts, and a custodian of the notes, including Plaintiff's Note, evidencing such debts, for the benefit of such investors.

62. As a result of the transfer of the Note as part of these securitization transactions, Defendants, with the possible exception of the Doe Defendants, are not the present owners of the debts under the respective Note or the obligees thereon.

63. Plaintiff, and, upon information and belief, Defendants, do not know who is or are the present owners of the debt evidenced by the Note, or the obligees thereon.

64. Upon information and belief, no individual or entity with the fundamental predicate legal standing--neither the investors in the mortgage backed securities nor any other entity or person who had a right to payment from the Plaintiff or who was or is a lawful beneficiary under the Trust Deed--ever declared a default of the Note executed by Plaintiff and no true beneficiary with a beneficial interest under the Trust Deed ever declared a default under the Note and Trust Deed.

65. No proper beneficiary under the Trust Deed ever directed or will ever direct a sale of the property owned by Plaintiff in which Lender is named as beneficiary at issue in their action.

66. On information and belief, no currently named Defendant is a holder in due course of the Note and thus all named Defendants are subject to all defenses and claims that the consumer could raise against the assignor of the Note as allowed by California law.

**ADDITIONAL OVERREACHING AND MISFEASANCE BY DEFENDANTS**

67. The Defendant Lender filled out the loan application for the Plaintiff.

68. Plaintiff, who had consistently and regularly made their mortgage payments since originally obtaining their loan, began experience economic difficulties in or around December of 2009. As such, he knew he was going to have problems making mortgage payments in the future. As a result, Plaintiff reached out to Defendant First Franklin, who he was led to believe had the authority to make decisions with respect to the mortgage, and asked if he could renegotiate the terms of the Note, even if only temporarily.

69. Despite Plaintiff's attempts to work in good faith with First Franklin, he nonetheless received collection phone calls from the Defendants approximately every 4-6

hours which were so persistent that the Plaintiff felt he was being harassed. Plaintiff would answer each call and provide the information requested, only to receive additional phone calls requesting the same information.

70. Plaintiff made initial contact with the Servicer by contacting the Servicer at the 1-800 number listed on the mortgage statement. Plaintiff does not know the name or the identity of the individual with whom he spoke, but understood and believed that this individual worked for First Franklin.

71. Plaintiff was told that he would be able to qualify for a loan modification which would materially assist him by reducing his monthly mortgage payments.

72. At the request of First Franklin, and in direct reliance on the representations that he likely qualified for a loan modification, Plaintiff gathered all of the requested information, including personal and corporate bank statements, personal and corporate tax returns, monthly budgets, bills, and a hardship letter. Plaintiff then sent those documents by fax and overnight mail in accordance with the express instructions given by First Franklin.

73. First Franklin or First Franklin's successor would repeatedly send the modification application to the Plaintiff. He did receive 2 different loan applications, many after he had already provided First Franklin with the information requested by promptly submitting the completed applications. Additionally, in numerous follow-up conversations with First Franklin, Plaintiff repeatedly was advised that First Franklin had lost and/or misplaced his personal financial information to the extent that First Franklin would require Plaintiff to duplicate his efforts in providing completed financial information to First Franklin that had already been submitted.

74. First Franklin or First Franklin's successor notified Plaintiff that he would have to make 3 monthly payments of $2,520.06 per month under a forbearance agreement to be eligible for a loan modification. Plaintiff made these "trial payments" as directed by First Franklin in January of 2010 the first payment for $2,194.28 and then two (2) subsequent payments in February and March of 2010 of the same amount in accordance with the trial payments agreement. Throughout the review of his application, First Franklin or First Franklin's successor would frequently lose documentation and request Plaintiff to supply them with income verification and/or pay stubs, all of which information Plaintiff had already been previously provided to First Franklin.

75. First Franklin continued to review the Plaintiff's loan modification application while simultaneously accepting "trial payments". Finally, 7 months after Plaintiff submitted his loan modification application, First Franklin or First Franklin's successor notified Plaintiff that he fell outside the parameters to modify the loan because the original loan was a "jumbo" loan.

76. First Franklin knew from the outset that Plaintiff's loan was a jumbo loan, yet encouraged Plaintiff to apply for a loan modification and accepted the "trial payments" knowing that the Plaintiff would not qualify.

77. First Franklin then informed Plaintiff that the parameters had changed and that he should reapply for the loan modification. However, First Franklin told Plaintiff that he would have to re-submit all of the same paperwork and start the process all over from the beginning, which the Plaintiff did.

78. Upon information and belief, First Franklin never intended to complete the loan modification, nor did First Franklin ever even have the authority to modify Plaintiff's loan.

79. Upon information and belief, First Franklin proposed the loan modification to induce Plaintiff to disclose financial information and to make "Trial Payments" with the intention to retain these payments without accepting a loan modification, all the time knowing that such payments were in fact legal and valid consideration paid by Plaintiff to obtain such modification.

80. In reasonable and good faith reliance on the representations of First Franklin, Plaintiff did not seek out alternatives to protect his home from foreclosure.

81. Pursuant to the Pooling and Servicing Agreement Defendants entered into with the Debt Pool described herein, Defendants were actually offered disincentives to modify Plaintiff's loan and were in fact incentivized and rewarded for pursuing the foreclosure process.

82. Plaintiff alleges that his claims against Defendants asserted herein offset the amount of delinquent payments and/or Plaintiff is not in default because of Defendants' misconduct concerning the underlying transaction as more particularly described herein.

83. Plaintiff makes only state statutory and common law claims in this complaint and to the extent that any claim is completely preempted by federal law, Plaintiff does not make it.

**FIRST CLAIM FOR RELIEF**
**(Declaratory Relief against all Defendants)**

84. Plaintiff incorporates and realleges in full paragraphs 1 through 83 of this Complaint as though fully set forth.

85. A true, present, and justiciable controversy exists between Plaintiff and Defendants.

86. The Defendants in this dispute will seek affirmative relief by attempting to foreclose on Plaintiff's home non-judicially.

87. Defendants, however, have failed to establish legal standing to do so by providing Plaintiff with any evidence of their authority to foreclose or a valid accounting for the Plaintiff's Note.

88. Defendants' efforts to foreclose have forced Plaintiff to sue, as is his right under the Trust Deed's express language acknowledging Plaintiff's rights to bring court action to assert the nonexistence of default or any other defense they have to acceleration and foreclosure sale.

89. On the foreclosure claims, Plaintiff is actually defending the right of a proper foreclosor (which Defendants claim they are) to foreclose, now in a judicial forum by necessity.

90. As a general rule, a person who is an attorney-in-fact or an agent solely for the purpose of bringing suit is viewed as a nominal rather than a real party in interest and will be required to litigate in the name of his principal rather than in his own name.

91. Defendants have refused to provide requested evidence showing the Note's default and the authority to enforce the Trust Deed, and have marched to a trustee's sale without right. This forced Plaintiff to sue, to provide a forum for relief. Consequently, the Defendants are subject to the jurisdiction of the court and required to satisfy requirements of standing and to competently demonstrate the authority to conduct the foreclosure sale before being allowed to actually conduct it.

92. Since, to demonstrate a right to foreclose, it is not sufficient for Defendants merely to have possession of the Note and since First Franklin or its successors have possession of the Note merely as a custodian for investors of the MBS,

Defendants may not foreclose without demonstrating an express agency to do so on behalf of the investors of the MBS.

93. The Court should declare that because First Franklin or its successor(s) is/are merely a custodian for undisclosed investors of the MBS, Defendants may not foreclose without demonstrating an express agency to do so on behalf of the investors of the MBS.

94. Moreover, the purported Lender and Servicer are not entitled to the Subject Property, which is security for the true holder of the Note—the investors in the MBS, upon information and belief. The purported Lender and Servicer parted with no money and they are entitled to collect none. The Court should declare and enter a preliminary and permanent injunction to this effect.

95. Because of the above facts, the Defendants should be declared to have no right to foreclose on their own behalf, or, alternatively, should be required to demonstrate any right they claim to foreclose as agents of the investors in MBS.

**<u>SECOND CLAIM FOR RELIEF</u>**
**(Intentional Misrepresentation against Defendants)**

96. Plaintiff incorporates and realleges in full paragraphs 1 through 95 of this Complaint as though fully set forth.

97. At the time Plaintiff contacted First Franklin and/or its successor, as described above, Defendants misrepresented to Plaintiff that he may qualify for a loan modification that would reduce his monthly mortgage payment.

98. At the time First Franklin and/or its successor made this representation to Plaintiff, First Franklin and its successor knew, upon information and belief, that it had no intent, and for that matter, authority, to modify Plaintiff's loan.

99. Instead, Defendants led Plaintiff to believe that he would qualify for a forbearance wherein he could make monthly payments of $2,520.06 and would then qualify for a loan modification.

100. Upon information and belief, First Franklin, NA or First Franklin's successor knew, as early as January 2010, when it first requested and received the signed Forbearance Agreement from Plaintiff that it would seek to foreclose the property. Yet, upon information and belief, Defendants continued to lead Plaintiff to believe that it would not attempt to foreclose.

101. Defendants' only reason for doing the forbearance was to be able to keep 100% of the payments collected during the trial payment period under the Forbearance Agreement. First Franklin and its successor, knowing full well that, because of their lack of standing, they would not and could not work with Plaintiff, nevertheless misrepresented that they could and would work with Plaintiff in order to take additional monies from Plaintiff by false pretenses. At all times, Plaintiff reasonably believed that the payments made under the Forbearance Agreement served as legal and valid and binding consideration to obtain a loan modification.

102. Based on Defendants' misrepresentations, Plaintiff reasonably believed that First Franklin and/or its successor, would work and negotiate in good faith with him to ensure that foreclosure of Plaintiff's home would be avoided.

103. Accordingly, Plaintiff continued making "trial payments" and did not look for or seek out alternative means or methods of protecting his home from foreclosure.

104. Plaintiff has been damaged in an amount according to proof at trial as a result of Defendants' misrepresentations in that he now faces foreclosure, which may have been avoided had Defendants not intentionally misrepresented facts to Plaintiff.

**THIRD CLAIM FOR RELIEF**
**(Negligent Misrepresentation against Defendants)**

105. Plaintiff incorporates and realleges in full paragraphs 1 through 104 of this Complaint as though fully set forth.

106. As described above, First Franklin and its successor, in the course of their business, repeatedly supplied false information to Plaintiff with respect to his ability to qualify for or obtain a loan modification.

107. First Franklin and its successor failed to exercise reasonable care in making representations to Plaintiff, both in writing and verbally.

108. First Franklin also failed to exercise reasonable care and diligence in obtaining relevant and necessary information from Plaintiff prior to making representations and giving guidance to Plaintiff.

109. Defendants knew or should have known that the information it supplied, or failed to supply, to Plaintiff was inaccurate.

110. Defendants misled Plaintiff into believing he would qualify or obtain a loan modification if he made "trial payments" under the Forbearance Agreement and would thereby avoid foreclosure.

111. As a result of the representations, Plaintiff continued making "trial payments" to Defendants with the understanding that doing so would allow him to avoid foreclosure of the home and to qualify for a loan modification.

112. Plaintiff has been damaged in an amount according to proof at trial as a result of Defendants' misrepresentations in that he now faces foreclosure, which may have been avoided had Defendants not misrepresented facts to Plaintiff.

///

**FOURTH CLAIM FOR RELIEF**
**(Quiet Title against Defendants)**

113. Plaintiff incorporates and realleges in full paragraphs 1 through 112 of this Complaint as though fully set forth.

114. Upon information and belief, Plaintiff's Trust Deed and Note were intentionally separated by assignment of the Trust Deed without assignment of the Note during the securitization process, thus lodging all of the Lender's foreclosure rights exclusively with the undisclosed investors in the MBS.

115. Subsequent to securitization of Plaintiff's Note, Defendants have no interest in the subject property.

116. Plaintiff's interest in and title to the Subject Property is greater than that of Defendants.

117. Accordingly, title in the Subject Property should be quieted in favor of Plaintiff and against Defendants.

**FIFTH CLAIM FOR RELIEF**

**(Lack of Formation of Contract)**

118. Plaintiff incorporates and realleges in full paragraphs 1 through 117 of this Complaint as though fully set forth.

119. The Trust Deed was void upon execution because the statements contained therein were untrue and the failure to disclose these facts to the borrower acted to the borrower's detriment and there was no meeting of the minds, no consideration and an utter failure to create a security instrument.

///

///

**SIXTH CLAIM FOR RELIEF**
**(PLEADED IN THE ALTERNATIVE)**
**(Breach of Covenant of Good Faith and Fair Dealing)**

120. Plaintiff incorporates and realleges in full paragraphs 1 through 119 of this Complaint.

121. The Trust Deed and the Note constitute valid and binding contracts.

122. In California, every contract includes an implied covenant of good faith and fair dealing.

123. On information and belief, U.S. Bank National Association, as trustee for the holders of the First Franklin Mortgage Loan Trust Mortgage Pass-Through Certificates, Series 2005-FF9 became a party to the Trust Deed through the assignment of the Trust Deed by First Franklin Financial Corporation.

124. As a party to the Trust Deed and Note, First Franklin, NA was subject to the implied covenant of good faith and fair dealing.

125. Upon information and belief, Defendant Does may have become parties to the Trust Deed and Note through assignment by First Franklin, NA or other unknown individuals or entities.

126. If assigned, Defendant Does were subject to the implied covenant of good faith and fair dealing.

127. First Franklin, NA breached the implied covenant of good faith and fair dealing by, among other things:

a. Making representations and material misrepresentations to the Plaintiff concerning the status of Plaintiff's Note and Plaintiff's ability to modify the terms of the Note;

b. failing to present evidence, upon Plaintiff's numerous pre-litigation written and verbal requests, including letters, regarding the unidentified and/or misrepresented current foreclosor's authority; and

c. failing to provide proof that it was (or is) the true holder of the Note or that it was the authorized agent of the investors in the MBS for purposes of foreclosing the Note and Trust Deed.

128. Upon information and belief, the Doe Defendants may have violated the implied covenant of good faith and fair dealing in the same manner.

129. As a direct and proximate result of First Franklin, NA's conduct, and, upon information and belief, the conduct of the Doe Defendants, Plaintiff has incurred, among other things, substantial damages, in an amount to be shown at trial.

130. Moreover, Defendants' conduct has forced Plaintiff to retain an attorney to obtain the benefits he owed under the Agreement. As such, Plaintiff is entitled to recover his attorney's fees and costs associated with this lawsuit.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays that the Court enter its Order herein:

1. Enjoining further dispositions of the Subject Property pending resolution hereof;

2. Declaring that Defendants lack any interest in the Subject Property which permitted them to foreclose, or attempt to foreclose, the Trust Deed and/or to sell the Subject Property;

3. Terminating all present collection activities under any security in the Subject Property and enjoining any further such collection actions not originated by the true and actual owners of the debt;

4. Declaring that the Trust Deed is not a lien against the subject property, ordering the immediate release of the Trust Deed of record, and quieting title to the subject property in Plaintiff against Defendants and all claiming by, through, or under them;

5. Refunding to Plaintiff from Defendants, jointly and severally, all fees and charges paid under the Trust Deed, and awarding Plaintiff costs of the action, including a reasonable attorney's fee;

6. Offset the amount of delinquent payments or a declaration that Plaintiff is not in default because of Defendants' misconduct concerning the underlying transaction; and/or For such other and further relief as the court deems just, appropriate, equitable and proper.

DATED: April 20, 2011

RES IPSA LAW GROUP

By: ______________________
CURTIS A. WESTFALL
Attorneys for Plaintiff

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury in connection with the above-captioned matter.

DATED: April 20, 2011

RES IPSA LAW GROUP

By: ______________________
CURTIS A. WESTFALL
Attorneys for Plaintiff